UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LENNAR CORPORATION, a Florida
corporation, LENNAR HOMES, LLC f/k/a
LENNAR HOMES, INC., a Florida limited      Case No: 1:10-cv-21909-WMH
liability company and U.S. HOME
CORPORATION, a Delaware corporation,

       Plaintiff,
v.

NAUTILUS INSURANCE COMPANY,
an Arizona corporation,

       Defendant.
_____/

**LENNAR'S MEMORANDUM OF LAW IN OPPOSITION TO NAUTILUS
INSURANCE COMPANY'S MOTION TO DISMISS WITH PREJUDICE**

       Plaintiffs, LENNAR CORPORATION ("Lennar Corp."), LENNAR HOMES, LLC f/k/a LENNAR HOMES, INC. ("Lennar LLC"), and U.S. HOME CORPORATION ("U.S. Home")(collectively, "Lennar"), pursuant to S. D. Fla. Rule 7.1, files its Memorandum of Law in Opposition to Nautilus Insurance Company's Motion to Dismiss with Prejudice.

**I.     INTRODUCTION AND BACKGROUND**

       Lennar sues Nautilus Insurance Company ("Nautilus") seeking a declaratory judgment that Nautilus is obligated to defend and indemnify Lennar in its capacity as additional insured under that certain Commercial General Liability policy issued by Nautilus to one of Lennar's drywall subcontractors, Alpha & Omega Contractors, Inc. ("A&O"). A copy of the subject policy, policy number C NC 0000499829 for policy period November 23, 2005 through August 10, 2006 is attached to Lennar's complaint as Exhibit "A" (the "Policy").

Lennar's claim arises out of homeowner assertions of property damage and personal injury stemming from alleged installation of Chinese drywall in homes built by Lennar. Lennar, as additional insured under the policy, tendered to Nautilus indemnity and defense with respect to property damage alleged by 39 homeowners whose homes contained drywall installed by A&O (the "Affected Homes"), with respect to certain statutory demands made to Lennar by certain of those homeowners under *Fla. Stat.* § 558, and as to numerous state court and federal court lawsuits, including, but not limited to three class action lawsuits [*Garcia, et al. v. Lennar Corporation, et al.,* Case No. 09-20739 (S.D. Fla. March 23, 2009); *Victores, et al. v. Lennar Homes, LLC, et al.,* Case No. 09-18414 CA 04 (11th Jud. Cir. for Miami-Dade County, Fla. March 5, 2009, removed to S.D. Fla. July 23, 2009, Case No. 09-22160); and, *de Gamboa, et al. v. Knauf Gips KG, et al.,* Case No. 09-21869 (S.D. Fla. July 6, 2009)].

Lawsuits against Lennar pertaining to Chinese drywall issues continue to be filed on a regular basis, and when applicable to the subject Nautilus policy, are tendered to Nautilus for defense and indemnity. Lennar alleges that Nautilus has a duty to provide a defense to Lennar, as an additional insured under the Policy, and to indemnify Lennar, in connection with the claim. Nautilus, however, has failed and refused to defend or indemnity Lennar in connection with any aspect of the claim.

In its Motion, Nautilus contends that exclusions in the Policy for "pollution" and "completed operations" control and that based on those policy exclusions Nautilus has no duty to defend Lennar under the policy. Nautilus contends that these matters can be summarily and finally concluded by the court on its motion to dismiss. Nautilus's arguments are inappropriate and premature under the circumstances of this case due to factual issues and an insufficient

record.  Moreover, the relied upon exclusions are not applicable to the allegations against Lennar in the underlying complaints and do not operate to deny coverage.

In addition, Nautilus points out that only Lennar Corporation, and not Lennar, LLC and U.S. Home, are expressly identified as an additional insured under the policy.  However, to the extent that Lennar Corp.'s subsidiary companies, Lennar, LLC and U.S. Home, are not expressly identified as intended, dismissal with prejudice by Nautilus is not appropriate.  Contemporaneously with this Opposition, Lennar has filed a Motion for Leave to Amend its complaint.  To the extent necessary, leave to amend to plead reformation based upon mistake should be freely granted in the interests of justice.

Lennar has properly pleaded sufficient facts to state a claim for relief based on Nautilus's duty to provide a defense in tendered actions and its duty to indemnify which is plausible on its face.  That is all that is required under modern federal pleading standards.  Plainly, there are legitimately disputed issues in this case which are not properly resolved on a Motion to Dismiss.  Nautilus's Motion to Dismiss should be denied.

**II.     ARGUMENT**

    **A.     Lennar's Complaint Satisfies Federal Pleading Standards.**

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in a light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F. 3d 1480, 1483 (11th Cir. 1994).  To survive a motion to dismiss, a complaint must merely allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1960 (2007).  A motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint, it does not decide the merits

of the case. *Milburn v. U.S.*, 734 F.2d 762, 765 (11th Cir. 1984); *Mason v. Cold, Scott & Kissane, P.A.*, 2008 WL 2051359 (S.D. Fla. 2008).

In its Motion[1], Nautilus asserts application of policy exclusions as a basis for dismissal. Policy exclusions are matters of affirmative defense on which the insurer bears the burden of proof. *St. Paul Mercury Insurance v. Coucher*, 837 So. 2d 483, 487 (Fla. 5th DCA 2002) *Peninsular Life Ins. Co. v. Hanratty*, 281 So. 2d 609, 611 (Fla. 3rd DCA 1973). A defense based upon a policy exclusion usually raises issues of fact that should *not* be decided on a motion to dismiss for failure to state a cause of action. *Florida Farm Bureau v. Insurance Company of North America*, 763 So. 2d 429, 432 (Fla. 5th DCA 2000); *Cintron v. Osmose Wood Preserving, Inc.*, 681 So. 2d 859, 860 (Fla. 5th DCA 1996).

Lennar's Complaint for Declaratory Relief and Damages alleges that Nautilus has a duty to defend and indemnify under the policy (¶20), that Lennar's claim is not precluded by any provisions or exclusions in the policy, and that there is an "actual controversy" between the parties regarding Nautilus's duties under the policy (¶¶ 29, 32). Clearly, Lennar's complaint alleges sufficient facts to show a plausible basis for relief. *Twombly*, 127 S. Ct. at 1960. The established rule with respect to the analogous Florida Declaratory Judgment Act, Florida Statutes Chapter 86, is that a motion to dismiss a complaint for declaratory judgment is not a motion directed to the merits of the case. Rather, such a motion in the context of a complaint for declaratory judgment is only to determine whether the plaintiff is entitled to a declaration, not

---

[1] Nautilus presumes that Florida law applies to this dispute. However, Florida follows the *lex loci* rule in determining the applicable law on an issue of insurance coverage. *Sturiano v. Brooks*, 523 So. 2d 11261128-1129 (Fla. 1988). This test applies the law of the state where the contract was formed. As between Lennar and Nautilus, the agreement to include Lennar as an additional insured under the Policy occurred via the Additional Insured Endorsement, CG 20 10 10 01 attached as part of the Policy. In that Endorsement, Lennar Corporation with an address in Hemet, California is identified as the additional insured. It is plausible that the contract as between Lennar and Nautilus was formed in California by virtue of this Endorsement.

4

whether it is entitled to a declaration its favor. *Romo v. Amedex Insurance Co.*, 930 So. 2d 643, 648 (Fla. 3rd DCA 2006); *Keen v. Florida Sheriffs' Self-Insurance Fund*, 854 So. 2d 844 (Fla. 4th DCA 2003); *Effort Enterprises of Florida, Inc. v. Lexington Insurance Company*, 666 So. 2d 930, 931 (Fla. 4th DCA 1996). It is not appropriate for the court to dismiss Lennar's complaint and terminate this controversy at this stage of the dispute.

Lennar's complaint for declaratory relief sets forth facts sufficient to make out a plausible claim for relief on its face. Nautilus's motion relies almost exclusively on Nautilus's own interpretation of the facts. Nautilus's motion seeks to adjudicate matters of affirmative defense before any discovery is conducted, and before any record has been developed. A motion to dismiss is not a substitute for a motion for summary judgment. *See*, *Axis Surplus Insurance Co. v. Superior Mortgage Services*, 2010 WL 55553 (M.D. Fla. 2010)("Simply put, all of Plaintiff's [insurer's] arguments are appropriate for the summary judgment stage, after the parties have ferreted out the facts and developed a record, not the motion to dismiss stage….") Nautilus's Motion to Dismiss should be denied.

  **B.** **Nautilus's Motion Fails to Affirmatively Show that it has No Duty to Defend.**

    **1.** **To Avoid its Duty to Defend Under the Policy, Nautilus has the Burden to Show that it is Clear Beyond Doubt that there is No *Potential* for Coverage.**

An insurer's duty to defend arises when a complaint against an insured alleges facts within the scope of the policy's coverage. *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F. 2d 810, 811 (11th Cir. 1985). A duty to defend is broader than the duty to indemnify. *Rad Source Technologies, Inc. v. Essex Ins. Co.*, 902 So. 2d 264, 266 (Fla. 4th DCA 2005); *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So. 2d 611, 612-613 (Fla. 4th DCA 1982). If the underlying complaint alleges facts partially within coverage and partially outside the scope of

5

coverage, there is a duty to defend. *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992); *Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guar. Co.*, 696 So. 2d 907, 901 (Fla. 3rd DCA 1997). Any doubt as to whether the policy provides a duty to defend should be resolved against the insurer. *New Amsterdam Casualty Co. v. Markham*, 95 So. 2d 413, 415 (Fla. 1957); *International Surplus Lines Ins. Co. v. Markham*, 580 So. 2d 251, 254 (Fla. 2nd DCA 1991). Insurance policies are construed against the insurer that drafted them, and exclusionary clauses are construed more strictly than coverage clauses. *Blue Cross and Blue Shield of Florida, Inc. v. Steck*, 778 So. 2d 374, 376 (*citations omitted*) (Fla. 2nd DCA 2001).

"So long as the complaint alleges facts that create *potential* coverage under the policy, the insurer must defend the suit." *Grissom*, 610 So. 2d at 1307 (*emphasis added*). *See, Baron Oil Co. v. Nationwide Mutual Fire Insurance Co.*, 470 So. 2d 810, 813 (Fla. 1st DCA 1985)(if allegations of complaint leave any doubt regarding duty to defend, insurer is required to defend.) Ordinarily, an insurer's defense based on an exclusion in the policy is an affirmative defense. *St. Paul Mercury Ins. Co. v. Coucher*, 837 So. 2d 483, 487 (Fla. 5th DCA 2002). Nautilus has the burden to prove that exclusions to coverage apply. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F. 3d 1511, 1516 (11th Cir. 1997). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are solely and entirely within the policy exclusions and are subject to no other reasonable interpretation." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp 2d 1348, 1359 (M.D. Fla. 2001)(*citations omitted*). Exclusionary clauses are read strictly and in a manner that affords the insured the broadest possible coverage. *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678 (Fla. 4th DCA 2009).

While Nautilus's motion discusses three class actions which are among the actions which Lennar tendered to Nautilus for defense, Nautilus fails to address the full scope of its possible obligations to Lennar under the policy. The Complaint alleges, in addition to the class actions "numerous actions," filed against Lennar in State Court, as well as notices under *Fla. Stat.* § 558, all of which raise allegations or information otherwise suggests that property damage arising out of A&O's operations within the policy period took place. *Complaint*, ¶¶ 18-21. The complaint alleges a duty to defend with regard to all of these actions. *Id.* at ¶ 21. However, Nautilus does not discuss the duty to defend as to these actions. None of the parties to the other actions, other than Lennar, are before the court, nor are the allegations being made in the actions presented. It is improper to adjudicate that aspect of relief requested in the Complaint on the basis of the existing record before the Court, and on the incomplete arguments advanced by Nautilus.

Additionally, it is plausible that Nautilus has a duty to defend Lennar as an indemnitee of A&O pursuant to the provisions found at ¶ 2 of page 8 of 16 of the Policy. To the extent that A&O indemnified Lennar in the subcontract between them, and to the extent that Nautilus is defending A&O under a reservation of rights, a duty to defend arises, provided the other identified conditions are met. While arguably more specific allegations in the complaint to support this theory would be preferred, the argument points up the danger of dismissing Lennar's claim of substantial rights under the policy on a virtually non-existent record, and with no right to amend as requested by Nautilus.

As discussed more fully below, Nautilus's motion fails to exclude any potential coverage for matters tendered to it by Lennar. Allegations of the owners of the Affected Homes do not fit "solely and entirely" within any exclusion relied upon by Nautilus. The exclusions relied upon by Nautilus are not demonstrably applicable from the face of specific complaints tendered for

7

defense. At best, there are factual issues regarding whether such exclusions are applicable. Therefore, Nautilus's motion should be denied.

>    **2.   Nautilus Cannot Establish Beyond Doubt the Applicability of the Completed Operations exclusion for Additional Insured coverage.**

Nautilus contends that because the owners of Affected Homes obtained their homes after Lennar completed its work, the damages claimed by such owners are within the Completed Operations hazard. According to Nautilus, the Additional Insured endorsement contains language purporting to exclude property damage "occurring" after covered operations have been completed. Therefore, Nautilus argues all property damage within Lennar's claim has been excluded, and there is no set of facts that Lennar can present which will come within coverage. (*See, Mo. to Dismiss*, ¶¶ 48-52) This argument ignores settled principals of when property damage "occurs" under Florida law, and is without merit.

Under Florida law, coverage under a Commercial General Liability (CGL) policy is triggered whenever an "occurrence" within the policy period results in actual "property damage." Therefore, there are numerous cases under Florida law determining when actual "property damage" "occurs" within the meaning of a CGL policy. *See, e.g., Mid-Continent Cas. Co. v. Frank Casserino Const.,* 2010 WL 2431900 (M.D. Fla. 2010); *Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.,* 581 F.Supp.2d 1201, 1206 (S.D.Fla.2008); *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 485 F.Supp.2d 1302, 1309-10 (M.D.Fla.2006); *North River Ins. Co. v. Broward County Sheriff's Office,* 428 F.Supp.2d 1284, 1289 (S.D.Fla.2006); *Auto Owners Ins. Co.,* 227 F.Supp.2d at 1266; *Am. Motorists Ins. Co. v. Southern Sec. Life Ins. Co.,* 80 F.Supp.2d 1280, 1284 (M.D.Ala.2000) (applying Florida law); *Harris Specialty Chems., Inc. v. U.S. Fire Ins. Co.,* Case No. 3:98-CV-351, 2000 WL 34533982 at *12 (M.D.Fla.2000); *Travelers Ins. Co. v. C.J. Gayfer's & Co.,* 366 So.2d 1199 (Fla. 1st DCA 1979) (citing, *inter alia, Prieto v. Reserve*

*Ins. Co.,* 340 So.2d 1282 (Fla. 3d DCA 1977)); 31 Fla. Jur.2d Insurance § 2451 (2d ed., current through Feb. 2010).  The general rule is that "property damage" "occurs" whenever the property damage manifests itself.  *Id.*

>    a.   **Property damage "occurs" within the meaning of a CGL policy when such damage is incurred, not when it is discovered.**

In *Trizec v. Biltmore Construction Co.*, 767 F. 2d 810 (11th Cir. 1985), the owner sued several subcontractors in connection with faulty construction of a roof deck that resulted in water intrusion.  *Id.* at 811-812.  One of those subcontractors sued its insurer for a determination that the insured had a duty to defend and indemnify.  *Id.*  The CGL policy period at issue was ended January 1, 1976.  *Id.* at 813.  The owner's complaint alleged that the extensive water intrusion damages were not discovered until 1979.  *Id.* at 812.  The insurer contended it had no duty to defend because the damage was not discovered until after the end of its policy period.  *Id.* at 813.  The 11th Circuit rejected the insurer's argument.  *Id.*

The Court held that the language of the complaint suggested "at least marginally and by implication" that the damage may have begun to occur immediately upon installation of the roof decks, and continued gradually over a period of time.  *Id.*  The fact that the damage was not visually observed by the owner was of no consequence.  "[I]t is the damage itself which must occur during the policy period for coverage to be effective."  *Id.*  Therefore, the Court concluded, the insurer had a duty to defend.

Similarly, in *Mid-Continent Cas. Co. v. Frank Casserino Const., 2010 WL 2431900 (*M.D. Fla. 2010*),* the issue on summary judgment was whether property damage "occurred" within the policy period.  *Id.* at 1.  The general contractor hired the insured subcontractor to perform roofing and other work at two residential projects.  *Id.* at 2.  The buildings were completed in 1998.  *Id.*  In late 2004, the general contractor was notified by the owners of

9

possible water intrusion. *Id.* The general contractor's expert inspected the buildings and concluded that latent defects in the buildings, upon a prudent investigation, would have been discernable upon the first measurable rains following installation of the roofing. *Id.*

The insurance company urged that because there was no evidence that property damage was discovered within the policy period, coverage should be denied. *Id.* at 7. The Court rejected this argument, stating, "That no one saw or 'discovered' damage caused by water intrusion during the policy period is of no moment." *Id.* According to the Court, the opinion by the general contractor's expert that the latent damage would have been discernable within the policy period had the inspection taken place then was a sufficient basis upon which to deny the insurer's motion for summary judgment. *Id.*

> **b.     That the owners of Affected Homes did not move in until after Lennar's operations were completed has no bearing on when the "property damage" occurred for purposes of the policy.**

Clearly, property damage in Florida "occurs" when the actual property damage is first manifested, not when it is discovered. That the owners of Affected Homes "do not seek to recover damages occurring prior to their ownership" is completely irrelevant. (*See, Mo. to Dismiss,* at n.1) The policy language of exclusion relied upon by Nautilus states, "This insurance does not apply to 'bodily injury' or 'property damage' occurring after …operations have been completed." Nautilus has not identified any statement in the class action complaints which alleges that damage did not occur until after operations of Lennar were complete. This is not surprising, since the owners of Affected Homes are not required to allege, would have no reason to allege, and would not be expected to allege when precisely the property damage first occurred. While that issue is pertinent to coverage, it has no bearing on the complaints of owners of Affected Homes.

      **c.**      **As pertains to the Completed Operations exclusion for Additional Insured coverage, a duty to defend is indicated from the face of the underlying complaints.**

Because Nautilus can point to nothing, and in fact there is nothing, contained in the underlying complaints to suggest that the "property damage" did not "occur" until after Lennar completed its operations, Nautilus's duty to defend, to the extent of its reliance on that particular exclusion to avoid it, is indicated. Nautilus has not shown and cannot show that the allegations of the complaints are "solely and entirely" within the relied upon policy exclusion and are "subject to no other reasonable interpretation." *Northland Cas. Co.*, 160 F. Supp 2d at 1359. (*citations omitted*). Therefore, the Motion to Dismiss should be denied.

      **d.**      **At a minimum, there is a factual issue as regards applicability of the Completed Operations exclusion for Additional Insured coverage that cannot be resolved on a Motion to Dismiss.**

Generally, the duty to defend is determined by examining the underlying complaint and evaluating those allegations against the language of the policy. *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10-11 (Fla. 2005). However, there are natural exceptions to this rule where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint. *Id.* at 11, n. 2. For instance, in *Homes by Deramo, Inc. v. Mid-Continent Cas. Co.*, 661 F. Supp. 2d 1281 (M.D. Fla. 2009), the district court rejected the insurer's argument that the court should not consider facts outside the underlying complaint in determining the duty to defend. *Id.* at 1287-1288. In *Homes by Deramo*, the district court acknowledged the exception recognized in *Higgins,* and deferred adjudicating the duty to defend issue until facts and documents pertinent to the dispute were before the court at the summary judgment stage. *Id. See also*, *American Home Assurance Co. v. Vreeland*, 2006 WL 1037111 (M.D. Fla. 2006)(acknowledging *Higgins* exception to general rule

and ability of the court to examine facts extrinsic to underlying complaint in evaluating duty to defend); *Fidelity National Prop. And Cas. Co. v. Boardwalk Condominium Assoc., Inc.*, 2010 WL 1911159 (N.D. Fla. 2010)(acknowledging *Higgins* and recognition that facts outside complaint can be considered when insurer defense based on facts not normally to be alleged in underlying complaint); *Parr v. Maesbury Homes, Inc*., 2009 WL 5171770 (M.D. Fla. 2009)(acknowledging *Higgins* permitting factual issues to be resolved in insurance policy obligations).

    The scientific evidence as to precisely *when* property damage resulting from Chinese drywall "occurs" is key to determining whether or not "property damage" alleged by the owners of Affected Homes "occurred" after Lennar's operations were completed.  Those facts are not in the record.  No discovery whatsoever has taken place in this case.  As discussed previously, Nautilus's motion addresses three class actions only and fails to address numerous state court actions and § 558 notices with respect to which the Complaint alleges that Nautilus has a duty to defend and indemnify.  See, Complaint ¶¶ 18-21.  While the duty to defend appears to be triggered by Nautilus's inability to show allegations in the underlying complaints that "property damage" did not occur prior to the completion of Lennar's operations, at a minimum, there are facts not before this Court which bear directly on the point.  If Lennar's right to a defense is threatened by the "Completed Operations" exclusion relied upon by Nautilus, Lennar should be permitted to put forth those facts for the Court's consideration. Nautilus's Motion to Dismiss should be denied.

### 3. Nautilus Cannot Establish Beyond Doubt the Applicability of the Pollution exclusion.

Nautilus's reliance upon the so-called "Pollution" exclusion contained in the policy to deny providing to Lennar a defense is similarly misplaced[2]. Pursuant to Endorsement, Exclusion f. of the policy provides, in pertinent part, as follows:

This insurance does not apply to:

> **f.    Pollution**
> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time….

In turn, the policy defines "pollutants" as "any solid, liquid, gaseous or thermal ***irritant or contaminant***, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste….

Nautilus relies on statements in the underlying complaint alleging that the Chinese drywall emits or "off-gasses" sulfides which somehow causes corrosion to copper elements throughout the Affected Homes. (*See e.g., Mo. to Dismiss,* pp. 2, 3, 6, 7, 9 and 10)  However, the complaints also discuss public statements by Chinese drywall manufacturer Knauf Gips, KG ("Knauf") that the "sulfur compounds detected in testing in homes have been found at no greater

---

[2]  Nautilus's motion relies upon the Florida Supreme Court's rejection of a long line of cases from other jurisdictions which examine the insurance industry's intention behind the so-called pollution exclusion and which hold that the pollution exclusion is limited to pollution in the traditional sense of environmental contamination.  (Mo. to Dismiss, ¶¶ 63-66).  *See*, *Deni Associates of Fla v. State Farm Fire and Cas. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998)(discussion of cases holding exclusion limited to industrial and environmental pollution); *FC&S Bulletin,* "Chinese Drywall: The Next Big Issue," p. 3 ("The exclusion was intended to limit or exclude coverage for environmental contamination, not product liability claims.")  However, *Deni* involved damages arising from a spill of ammonia and from the insecticide Enthion 4.  *Id.* at 1136-1137.  There are no Florida appellate decisions interpreting damage alleged to have been caused by Chinese drywall as "pollution."  Moreover, California law (which arguably applies as to Lennar) holds that the pollution exclusion is limited to injuries arising from environmental pollution.  *MacKinnon v. Truck Ins. Exchange*, 31 Cal 4th 635, 654 (Cal. 2003).  Accordingly, Nautilus has failed to exclude a plausible claim upon which relief may be granted and its motion should be denied.

levels than air outside homes or in soil, marshes or the ocean." *See, Garcia, et al. v. Lennar Corporation, et al.,* Case No. 09-20739 (S.D. Fla. March 23, 2009) at ¶ 90; *Victores, et al. v. Lennar Homes, LLC, et al.,* Case No. 09-18414 CA 04 (11th Jud. Cir. for Miami-Dade County, Fla. March 5, 2009, removed to S.D. Fla. July 23, 2009, Case No. 09-22160) at ¶ 99; and, *de Gamboa, et al. v. Knauf Gips KG, et al.,* Case No. 09-21869 (S.D. Fla. July 6, 2009) at ¶ 105. The complaints do not allege that emissions from Chinese drywall constitute "pollution" nor that any such alleged emissions are "irritants" or "contaminants" within the policy definition of "pollutants." Accordingly, the allegations of the complaints are not "solely and entirely" within the relied upon policy exclusion and "subject to no other reasonable interpretation." *Northland Cas. Co.*, 160 F. Supp 2d at 1359. Allegations of the complaint that emissions from Chinese drywall are at levels no higher than naturally occurring outside air suggest that the drywall, in and of itself, is *not* emitting a "pollutant."

According to one study which Nautilus itself has relied upon[3], emissions from Chinese drywall, in and of themselves, are benign. One such study, a *Memorandum* dated December 22, 2008 by Environ environmental engineers that was submitted to the Florida Department of Health, reported that:

- that air sampling was conducted at 79 homes indentified as having Chinese Drywall installed in them;

- that hydrogen sulfide was *not detected* in samples from *any* of the affected homes;

- that carbon disulfide was detected in only 20 of the 79 affected homes. The highest level found was 13 parts per billion by volume (ppbv), and the average level of the 20 positive tests was 7.1 ppbv. In contrast, the

---

[3] The cited study was attached to the original complaint in a state court action filed by Nautilus against Lennar and A&O. *Nautilus Insurance Company v. Alpha & Omega Contractors, Inc. and Lennar Homes, LLC*, Case No. 10-13309 CA 13, 11th Judicial Circuit in and for Miami-Dade County, Florida.

> US Department of Health and Human Services has established a level for chronic inhalation levels of carbon disulfide at 300 ppbv and the EPA has determined a value of 200 ppbv to be safe for sensitive individuals; and,
>
> - that carbonyl sulfide was detected in only 7 of 79 residences. The average measure in the 7 positive tests was 8.6 ppbv. In contrast, naturally occurring levels in the outdoor air in marshy areas can range from 24-73 ppbv. Animal testing suggests levels safe for chronic inhalation to be as high as 50,000 ppbv.

Thus, according to the data in this report which Nautilus itself has relied upon, the ambient air in homes with Chinese drywall homes contained at sulfides at levels *3 to 7 times less* than outdoor air in marshy areas. *See,* Exhibit "A" attached hereto. This is certainly not indicative of an "irritant" or a "contaminant."

Owners of Affected Homes would not be expected to plead causation between Chinese drywall and damage to the Affected Homes to the level of detail necessary to evaluate whether the property damage is being caused by a "contaminant" or an "irritant." Accordingly, under Florida law, this Court should look outside the underlying complaints and examine extrinsic in evaluating whether the complaints come within the exclusion relied upon by Nautilus. *Higgins*, 894 So. 2d at 11, n. 2; *Homes by Deramo, Inc.*, 661 F. Supp. 2d at 1287-1288; *Vreeland*, 2006 WL 1037111 (M.D. Fla. 2006); *Boardwalk Condominium Assoc., Inc.*, 2010 WL 1911159; *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770.

Judicial determinations regarding insurance coverage for property damage alleged to arise from Chinese drywall affect a large number of homeowners. A substantial body of scientific evidence exists and continues to be developed which will shed light on the reactions between Chinese drywall and corrosion to copper elements. Certainly, Nautilus's claim that such property damage arises due solely and entirely to "pollution" and that there is no other reasonable explanation cannot be accepted at this early phase of this case. The allegations of the

complaint suggest emissions from Chinese drywall no more concentrated that normal outdoor air. Therefore, the Motion to Dismiss should be denied.

      **C.**      **The claim of Lennar Homes, LLC and U.S. Home Corporation should not be dismissed with prejudice.**

The General Change Endorsement to the subject policy identifies as a policy additional insured:

> Lennar Corporation
> Insurance Compliance
> PO Box 12010 LC
> Hermet, CA 92340

Nautilus contends that there is no set of facts upon which either Lennar Homes, LLC or U.S. Home Corporation is entitled to a defense or to indemnity under the policy, and that therefore the complaint should be dismissed *with prejudice* as to Lennar Homes, LLC and U.S. Home Corporation.

However, the omission of Lennar Homes, LLC and U.S. Home Corporation from the additional insured endorsement is plainly a product of mistake. The subcontracts between A&O and Lennar required that A&O procure an additional insured endorsement on its CGL policy in favor of "Lennar Corporation, including its subsidiaries, partners, partnerships, affiliated companies and successors and assigns." Lennar Homes, LLC is a Florida limited liability company, and U.S. Home Corporation is its sole member. Lennar Corporation owns 100% of the shares of U.S. Home Corporation. Lennar Homes, LLC and U.S. Home Corporation are therefore subsidiaries and affiliates of Lennar Corporation. Had the additional insured endorsement been stated as required by A&O subcontract, both Lennar Homes, LLC and U.S. Home Corporation would be within its scope.

Notably, the subcontract also requires that the certificates of insurance and endorsements be sent to "Lennar Corporation, Insurance Compliance, PO Box 12010 LC, Hermet, CA 92340." Through a mistake or scrivener's error, this destination address became the additional insured reflected on the endorsement. It is clear that a mistake occurred in identifying the additional insured on the policy.

Under Florida law, an insurance contract can be reformed to reflect the mutual intent of the parties as to the identity of an insured. *Tobin v. Michigan Mutual Ins. Co.*, 948 So. 2d 692, 696 (Fla. 2006); *Canal Ins. Co. v. Hartford Ins. Co.*, 415 So. 2d 1295, 1297-1298 (Fla. 1st DCA 1982). Contemporaneously with this Memorandum of Law, Lennar has filed a Motion for Leave to Amend. The Amended Complaint seeks reformation of the subject policy to reflect "Lennar Corporation, including its subsidiaries, partners, partnerships, affiliated companies and successors and assigns" as the additional insured as intended by the parties.

Leave to amend is to be freely granted when justice so requires. *Fed. R. Civ. P. 15 (a)(2)* (2010). *See Borden, Inc. v. Florida East Coast Ty. Co.,* 772 F.2d 750 (11th Cir. 1985) (There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment.); *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402 (11th Cir. 1994)(In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted).

Lennar should be granted leave to amend its complaint and the reformation action should be permitted to go forward on the merits. Nautilus's motion to dismiss with prejudice due to the misnomer in the identification of the additional insured should be denied.

**III.     CONCLUSION**

For all of the foregoing reasons, Nautilus's Motion to Dismiss With Prejudice should be denied.

Dated this 13th day of September, 2010.

> Respectfully submitted,
>
> BARNETT, BOLT, KIRKWOOD,
> LONG & MCBRIDE
>
> /s/ Charles A. Carlson
> Thomas G. Long
> Florida Bar No. 367321
> Charles A. Carlson
> Florida Bar No. 716286
> Amy E. Stoll
> Florida Bar No. 150959
> 601 Bayshore Boulevard, Suite 700
> Tampa, FL 33606
> Telephone (813) 253-2020; Fax (813) 251-6711
>
> Attorneys for Lennar Homes, LLC,
> U.S. Home Corp and Lennar Corporation

**Certificate of Service**

I HEREBY CERTIFY that a true and correct copy of the foregoing has provided to been counsel of record registered the Court's CM/ECF via electronic mail on this 13th day of September, 2010.

> /s/ Charles A. Carlson
>           Attorney

bbkldocs-#484995-v1-opposition_to_mo_to_dismiss